counts and settlement were made more than one year prior to suit.

We come next to a consideration of the debentures which Charlton, Jr., pledged to the defendant as security for his indebtedness to him.

In the next place, plaintiff asks for judgment for the amount of the debenture bonds in question. They object to the return of bonds they say have become worthless while in the possession of the pledgee, and that they were valuable when he accepted them as collaterals.

We are not inclined to that view. These bonds had only a precarious value from the first. If they have become worthless, the record does not show that it was owing to defendant's act. They will have to be returned by defendant to plaintiff.

With reference to the injunction, plaintiff did not tender to defendant the amount to which he was entitled; besides the facts of the case do not show that strictly an injunction was necessary to protect plaintiff's right. The action of the district court regarding this injunction has our approval.

For reasons assigned, the judgment appealed from is affirmed.

Rehearing denied June 30, 1904.

———

(36 South. 970.)

No. 15,044.

BARROW v. GRANT'S ESTATE et al.*

(May 9, 1904.)

MORTGAGE—ACTION TO CANCEL—FRAUD—PARTIES.

1. The wife of plaintiff handed over money to the late William M. Grant to buy property for her from a homestead association, and afterward handed him amounts to pay the installments of the price.

That Grant placed the title in his own name and paid the installments in his own name is the testimony of record.

———

*Rehearing denied June 24, 1904.

In course of time it became known to plaintiff that the title of the property was in the name of Grant.

Grant and the daughter of plaintiff appeared before a notary, who read the act of sale to them. Grant retained a mortgage of $3,000 on the property.

The action is brought to cancel this mortgage on the ground that it was not the property of Grant, and that he had no right to it.

The vendee, having neglected to listen to the conditions upon which the title was placed in her name, viz., that she was to pay to the vendor $3,000, might protect herself against any loss on account of this mortgage. She cannot, however, set up defenses and urge rights in the interest of third persons.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Frederick Durive King, Judge.

Action by H. G. Barrow against the estate of W. M. Grant and others. Judgment for plaintiff, and Frank Zengel, administrator, appeals. Reversed.

Cunningham & Cunningham and Frank McGloin, for appellant Frank Zengel. Dinkelspiel & Hart, for appellee Joseph Barry. William Stirling Parkerson, for appellee Sarah Louise Barrow.

BREAUX, C. J. Originally, plaintiff sued in the name of his asserted minor, Sarah Louise Barrow, for a judgment decreeing that she is not indebted to the estate of W. M. Grant, and directing the recorder of mortgages to cancel and erase the inscription of a mortgage inscribed against her in favor of the late William M. Grant.

We are informed by the petition that plaintiff's wife, having confidence in the late William M. Grant, gave him money to make certain payments on the property which she intended to and which she claims she bought from one of the local homestead associations.

He also alleges that she handed money to him to pay the taxes and insurance premiums on the property. He claims: That she paid for the improvements on the property. That she took possession of the property in

June, 1890, and has since that date been in continuous possession.

That although Grant had promised to buy the property in her name, he bought it in his own name, and with the amounts which she handed to him from time to time to pay the homestead association and consummate the purchase.

That by the deceitful practices and fraudulent representations of W. M. Grant he did not know that the title was in Grant instead of that of his wife. Not only the title was in Grant's name, he had mortgaged it for $1,200.

That he and his wife became aware in the spring of 1900, when a suit was brought against the owner of the title as per record, W. M. Grant, by a workman for improvement on the property.

From that time plaintiff's wife sought to obtain from Grant a written acknowledgment in due form of her title.

It appears that Grant, by act before Edgar Grima, notary, placed the title in the name of Sarah Louise Barrow, the daughter of plaintiff, for the price of $3,650, part ($650) cash, which the daughter did not pay, and $3,000 on time, for the payment of which a vendor's lien and mortgage was retained.

Grant died in March in the year 1902, intestate, leaving no notarial recognition of her title and no known heirs.

Defendant interposed the plea of no cause of action, and averred in the exception that plaintiff's daughter, for whose benefit, as a minor, he had brought suit, was not a minor.

It was after this exception had been filed that the daughter amended and supplemented her petition, and averred that she was of age, and that it was owing to a misunderstanding of counsel that the suit had been brought in the name of her father. This amendment and supplement was allowed by the court, and the daughter became the plaintiff in lieu of her father. The exception before referred to was overruled.

Defendant, the public administrator, repre-

senting the succession of Grant, then filed an answer and a supplemental and amended answer in which he pleaded estoppel by deed of record; that plaintiff was estopped from contradicting the recitals of the authentic deed; that she had no counter letter. The exception of no cause of action, taking the allegation of plaintiff's petition as true, was properly overruled. The trial court's action in overruling the exception being, in our view, correct, it remains for us to review the issues on the merits.

The following is a statement of salient facts:

H. G. Barrow and Mrs. Barrow had known the late William M. Grant for about 20 years prior to his death, and in time he became an intimate friend of the family—resided with them free of any charge. In course of time he obtained employment, and paid for his board, washing, and care, $40 a month.

Mrs. Barrow testified that she gave him the sum of $480 to make the first payment on the property in question, and thereafter, each month, an amount which amounted to a total of $500 each year; and that she gave him, in addition, an amount to pay the taxes and insurance.

Several letters passed between Mrs. Barrow and the late W. M. Grant, containing reference to the former's daughter, plaintiff in the present case. There is also a letter of the daughter in evidence. They, as well as verbal testimony, were admitted over the objection that no parol evidence is admissible to contradict the written recitals of the act, and no evidence is admissible outside of a counter letter or written equivalent thereto going to vary or contradict the recitals of the act. The contents of these letters are lengthy. We will, as much as possible, abbreviate their text.

In one of the letters addressed to Mrs. Barrow, under a nickname by Grant, he states he has just received a communication from "the kid" ("the kid," it seems, was plain-

tiff's daughter), in which she says that she and her mother, to whom W. addresses the letter, had a conversation as to the possession of the property in question, and that she ("the kid") was to be the nominal owner, and the mother (Mrs. Barrow) the actual owner, on the understanding that it was to be a home for both.

He said that he hesitated to approve, as he first desired to know if it is perfectly agreeable to her—

"For [to quote from his letter] while I do not in the least doubt the accuracy of the 'kid's' statement that the arrangement pleases you, I would like you to say so yourself, because in a recent somewhat vague letter from you, I read the words: 'I do not see why you should donate your place to Louise; if forced by necessity I should certainly prefer to live from your bounty than from Louise's.' You will my dear 'Mite' perhaps have the goodness under the circumstances to let me know explicitly whether you prefer to go on occupying the place as a home, without disturbance or interference from me, or whether you would prefer that I should deed it to the 'kid'—to be equally a home for you. You will no doubt observe that, in either case, your comfort is the object aimed at; and you must be pleased to understand that never at any moment has the 'bounty' idea entered, or is likely to enter, my mind.

"Please, therefore, my dear Mite to indicate clearly whether you approve the contemplated arrangement to turn over the place to the 'kid' to be your and her home, or what is it you would like.

"I am, with love, yours,     W."

The foregoing, the record discloses, was in Grant's handwriting. This we infer was in answer to a letter addressed by "Mite" (Mrs. Barrow) to him, dated October 1, 1900, in which she says to him that she never questioned his honesty nor honor even once, "but my property should not stand in your name." Further in this letter she states:

"Now, if you have taken possession, I do not see why you should donate your place to Louise. * * * Having paid you cash in hand it should no longer be a question of advice or solicitation for us, but a business transaction. I feel unsettled and uncomfortable since I knew that you bought my place in your name. I will tell you the truth Will, it has been a kind of shock to me ever since. I realized that for all these years you have deceived me and that it took a law suit to find out that you held my place in your name, but you say all this you will explain. The kid seems to be mystified over your last and appeals to me to know what you mean by your offer to give her my place."

There is evidence in the record corroborating the foregoing. On the part of the defense the testimony is that Grant enjoyed an exceptionally good reputation. A number of highly respectable witnesses have sworn that he was a man of integrity, and that he was honorable in all his dealings. He was employed as a writer at a salary of $40 a week by one of the daily papers of New Orleans. He was fond of his friends, and, at times, with them was convivial, and would go out and enjoy "the cup that cheers," but very seldom, however, it is said in the testimony, to inebriety.

The testimony discloses that he spoke of the property to a few of his friends as his own, mortgaged it as his own, and paid for some of the improvements thereon.

We are more particularly concerned with plaintiff's case, and must return to a consideration of the testimony to the extent that she is interested or not as a party to this suit. She did buy the property, as alleged, on the 23d day of the month of January, 1901, and signed the deed evidencing a mortgage for $3,000, as averred. It was a free and voluntary act on her part, and one by which she must be held bound. She cannot be heard to urge her inattention at the reading of the sale by the notary, superinduced by a request of the vendor made of her, she says, not to be attentive to the notary's reading. Even giddy young girls, if they become purchasers of property, must be held bound by the rules which govern in passing a sale. It was a serious transaction, and not one which can be brushed aside by the buyer's assertion, which goes, at most, to show infantile behavior, for which in a business transaction there is no excuse.

The letters and the testimony of the buyer do not lead us to infer that she did not know better than to follow the suggestion of the

vendor. She writes a clear, readable letter in every respect, and her testimony is that of an intelligent young girl. The influence was not of that serious nature that would justify us in setting aside the sale.

It had been talked of for some time by all the parties concerned. She must have been fully prepared, or she should have been, to sign a deed conveying title.

Parol evidence of a buyer is not admissible to contradict or destroy a deed of sale on such ground as that mentioned, especially when the vendor is dead, and a construction never intended may have been placed on his utterances by the buyer. The parol evidence of plaintiff cannot thus destroy her own solemn act. Civ. Code, arts. 2235, 2236, 2238.

To the extent that plaintiff attempts to set up the right of her mother, she must fail in this suit, for the reason that her mother is the proper party to bring suit. Plaintiff cannot be heard to champion the mother's claim.

As to plaintiff, it is a question exclusively as between her and the vendor, with which the mother is not concerned. If she is, she will have to claim the right in her own name, for it is a well-settled principle that conventions and agreements can have effect only between the parties, and they cannot acquire a right for a third person who was not a party to the act.

Whatever rights third persons have must be asserted by themselves.

The question is left open, and no part of the claim between this plaintiff and this defendant should be held to prejudice the rights of any one not party to the suit.

Others may have rights; others may not be estopped. As to the present plaintiff, under repeated decisions she is not in an attitude, as plaintiff, to enable her to treat as naught her own authentic deed, and for that reason

The judgment appealed from is avoided, annulled, and reversed, and, as to her, the suit is dismissed.